UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TYRONE TOLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-01590-TWP-CSW |
| ) | |
| VERNON L. OSBURN Nurse Practitioner, ) | |
| JESSICA LOVE, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANT'S' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment (Dkt. 54), filed by Defendants Vernon L. Osburn, Nurse Practitioner ("NP Osburn") and Jessica Love ("Ms. Love") (collectively "the Defendants"). Also pending is *pro se* Plaintiff Tyrone Toles' ("Mr. Toles") renewed Motion for Assistance with Recruiting Counsel. (Dkt. 76). Mr. Toles, a prisoner incarcerated at Pendleton Correctional Facility ("Pendleton"), filed this action alleging the Defendants were deliberately indifferent to his Achillies tendon injury by failing to provide prompt medical care. (Dkt. 8). Mr. Toles failed to timely respond to the summary judgment motion, so the motion is unopposed. For the reasons explained below, summary judgment is **granted,** and Mr. Toles' motion for recruited counsel is **denied** as moot.

**I. STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir.

1

2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Toles failed to timely respond to the summary judgment motion.[1] Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

---

[1] Defendants moved for summary judgment on October 18, 2024 (Dkt. 54) and provided Mr. Toles Notice Regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment that same day. (Dkt. 57). Thereafter, the Court granted Mr. Toles an extension of time to respond to the summary judgment motion. (Dkt. 63). To date, no Response has been filed.

## II. FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Toles and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73. Although Mr. Toles did not respond to the motion, his verified Amended Complaint, (Dkt. 8), is considered when determining the facts.

In June 2023, NP Osburn was a Nurse Practitioner employed by Centurion Health ("Centurion") and assigned to Pendleton; and Ms. Love, the Administrative Assistant of Medical, was head of the nursing staff at Pendleton' Correctional Facility's Medical Unit, and she was hired by Centurion. (Dkt. 24 at 3). On June 26, 2023, Mr. Toles injured his left ankle while playing basketball at Pendleton. (Dkt. 55-1 at 19). The next day, he submitted a healthcare request form. (Dkt. 8-3). On July 3, 2023, he submitted another healthcare request form complaining that he had not yet been seen. (Dkt. 55-1 at 163). He was seen on July 6, 2023, by a non-party nurse who elected to contact the doctor and obtain a voice order for an ankle x-ray. *Id.* at 19. Mr. Toles received an x-ray the same day, and the x-ray showed no evidence of fracture, dislocation, osteomyelitis, or soft tissue swelling. *Id.* at 15, 173. The non-party nurse then referred Mr. Toles to NP Osburn for treatment after reviewing his x-ray. *Id.* at 19.

On July 11, 2023, NP Osburn saw Mr. Toles and prescribed him Motrin three times daily for ten days, issued him a wheelchair pass, and a lay-in pass for two weeks. *Id.* at 20. She also educated him to ice, stretch and rest his foot and recommended a follow up visit in two weeks. *Id.* at 22-23. Exactly two weeks later, Mr. Toles submitted a healthcare request form complaining that he had not had a follow up appointment. *Id.* at 164.

On August 1, 2023, Mr. Toles saw a doctor who noted that his Achilles tendon was tender, consistent with "at least a partial Achilles tear;" that doctor prescribed naproxen twice a day and

3

renewed his wheelchair and lay-in privileges for another two weeks. *Id.* at 26, 28, 31. The doctor then requested approval for an outpatient ultrasound of Mr. Toles ankle and an orthopedics visit. *Id.* at 33. The same day, Mr. Toles filed a grievance complaining that he received inadequate treatment from the doctor. (Dkt. 55-2 at 15). Specifically, he complained that his Achilles tendon "is still swollen and nerve damage causing knee, lower and mid back, and problems with my right leg previously injured in 2015 resulting in surgery" and the doctor told him to continue hopping up and down the stairs after roughly handling his foot. *Id*.

Mr. Toles had an ultrasound a week later that showed a complete full-thickness tear of his Achilles tendon. (Dkt 55-1 at 38). On August 13, 2023, he filed another healthcare request form complaining of knee and back pain and stating his medication was ineffective. *Id.* at 20. He was seen by a nurse three days later who referred him to a provider because he was not responding to protocol. *Id.* at 43, 45.

On August 21, 2023, Mr. Toles submitted a healthcare request form complaining that "administration and healthcare staff have been putting off my issues as minimal and even obsolete/" *Id.* at 160. Three days later, Mr. Toles met with NP Osburn who provided him two different pain relievers and a Toradol injection which he received three more times thereafter. *Id.* at 46, 48, 50, 52.

On August 28, 2023, Mr. Toles was seen by an outpatient doctor who discussed the treatment options for his ankle. *Id.* at 175, 177. Mr. Toles elected surgery, and it was approved and scheduled the next day. (Dkt. 55-3 at 11).

On September 15, 2023, Mr. Toles filed a Complaint with this Court alleging deliberate indifference. (Dkt. 8). In his verified Amended Complaint, Mr. Toles states that Ms. Love failed

4

to, or refused, to schedule him to be called out or have him escorted to his medial sick call appointments. *Id*. at 6.

On September 27, 2023, Mr. Toles received Achilles tendon repair surgery. *Id.* at 186.

### III. DISCUSSION

Mr. Toles 42 U.S.C. §1983 claim is that the NP Osburn and Ms. Love violated his constitutional rights by exhibiting deliberate indifference to his serious medical condition. The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Toles' Achillies tendon injury was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that NP Osburn and Ms. Love acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Toles'] health." *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Mr. Toles has failed to meet this burden. The record shows that Mr. Toles consistently received medical care for his Achilles tendon tear, and that medical staff frequently provided pain medication, ordered tests, and promptly investigated his injury until his eventual surgery in September of 2023.

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

*See also Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021) ("Persisting in treatment known to be ineffective can constitute deliberate medical indifference, provided that the doctor was subjectively aware that the treatment plan was ineffective.").

As an initial matter, although Mr. Toles alleges that Ms. Love, an administrative medical assistant "played a role in failing to or refusing to schedule [him] to be called out or have him escorted to his medical sick call appointments," the designated evidence shows these allegations were outside her job description. (Dkt. 8 at 6). Ms. Love was not responsible for scheduling offenders to be seen by medical providers within the facility, nor for arranging offenders to be escorted to or from medical sick call appointments. (Dkt. 55-4 at 2). Rather, her role was to simply submit referrals once they were approved to Centurion's utilization management team, which she promptly did within 24 hours of receiving from a provider. (Dkt. 55-3 at 9, 11). No reasonable juror could find that she was deliberately indifferent in scheduling Mr. Toles' appointments.

With respect to NP Osburn, no juror could find that she was deliberately indifferent in her treatment of Mr. Toles injury. Mr. Toles submitted his first health care request on June 26, 2023, and was seen by a non-party nurse on July 6, 2023. That same day, the non-party nurse contacted

a doctor requesting an order for an x-ray, the x-ray was taken that day—and the x-ray showed no fractures. The non-party nurse then referred Mr. Toles to NP Osburn for treatment after reviewing his x-ray. NP Osburn first saw Mr. Toles on July 11, 2023.

The evidence shows that rather than a delay in treatment, NP Washington worked diligently to assist Mr. Toles with his ankle injury. NP Osburn gave him numerous medications and accommodations while he was being treated for his injury. Once medical staff determined that Mr. Toles' Achilles tendon was truly torn through the ultrasound, he received surgery in less than two months. The Court finds no obvious basis for finding that NP Osburn delayed treatment or persisted in something that was obviously ineffective.

No delay in Mr. Toles treatment can be attributed to either Defendant. Without the benefit of contradictory designated evidence, no reasonable juror could find that either NP Osburn or Ms. Love were deliberately indifferent to Mr. Toles' medical needs, and accordingly, summary judgment must be **granted.**

### IV.   CONCLUSION

For the reasons explained above, Defendants Vernon L. Osburn NP Osburn and Jessica Love's Motion for Summary Judgment, Dkt. [54], is **GRANTED**. For the reasons articulated in the Court's previous order, Dkt. 72, and because summary judgment is granted, Mr. Toles' renewed Motion for Assistance with Recruiting Counsel, Dkt. [76], is **DENIED.**

Final judgment shall issue by separate entry consistent with this order and the Court's screening at Dkt. [13].

**IT IS SO ORDERED.**

Date:   8/25/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

TYRONE TOLES
157460
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Lisa G. Arnold
Bleeke Dillon Crandall, P.C.
lisa@bleekedilloncrandall.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com